**UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **MICHAEL VALDEZ,** | **1:17-CV-00430-LJO-SAB** |
| **Plaintiff,** | **MEMORANDUM DECISION AND ORDER GRANTING IN PART AND DENYING IN PART MOTIONS FOR SUMMARY JUDGMENT** |
| **v.** | |
| **HANFORD POLICE OFFICER LARRY LEEDS, in his individual capacity;** *et al.*, | |
| **Defendants.** | **(ECF Nos. 107, 108, 109)** |

## I. PRELIMINARY STATEMENT TO PARTIES AND COUNSEL

Judges in the Eastern District of California carry the heaviest caseloads in the nation, and this Court is unable to devote inordinate time and resources to individual cases and matters. Given the shortage of district judges and staff, this Court addresses only the arguments, evidence, and matters necessary to reach the decision in this order. The parties and counsel are encouraged to contact the offices of United States Senators Feinstein and Harris to address this Court's inability to accommodate the parties and this action. The parties are required to reconsider consent to conduct all further proceedings before a Magistrate Judge, whose schedules are far more realistic and accommodating to parties than that of U.S. Chief District Judge Lawrence J. O'Neill, who must prioritize criminal and older civil cases.

Civil trials set before Chief Judge O'Neill trail until he becomes available and are subject to suspension mid-trial to accommodate criminal matters. Civil trials are no longer reset to a later date if

Chief Judge O'Neill is unavailable on the original date set for trial. Moreover, this Court's Fresno Division randomly and without advance notice reassigns civil actions to U.S. District Judges throughout the Nation to serve as visiting judges. In the absence of Magistrate Judge consent, this action is subject to reassignment to a U.S. District Judge from inside or outside the Eastern District of California.

## II. <u>INTRODUCTION</u>

On January 1, 2016, plaintiff Michael Valdez ("Plaintiff") was stopped while riding his bicycle by Hanford Police Department Officer Larry Leeds ("Leeds"), who used his patrol car to effectuate the stop. ECF No. 109 at 7. As a result of that stop, Plaintiff filed this action, alleging various claims under 42 U.S.C. § 1983 ("§ 1983") and state law. *See generally* ECF No. 77. Plaintiff later amended his action to include further § 1983 claims, based on subsequent actions allegedly taken by Hanford Police Department ("Hanford PD") officers and its purported agents after the initial filing of this case. ECF No. 77 at ¶¶ 47-72, 111-147. Before the Court are three motions for summary judgment, one from Plaintiff and two from Defendants. ECF Nos. 107, 108, 109. The Court finds it appropriate to rule on the motions without oral argument. *See* Local Rule 230(g). For the following reasons, the Court GRANTS IN PART and DENIES IN PART the motions.

## III. <u>BACKGROUND</u>

On January 1, 2016, Plaintiff was stopped while riding his bicycle by Defendant Leeds following a pursuit. ECF Nos.108-6 at 2; 109 at 7. Leeds used his patrol car to effectuate the stop, with the exact physics of the stop disputed between Plaintiff and Leeds, though undisputed that, one way or another, Plaintiff ended up off his bicycle. *Id*. Also contested is whether Plaintiff physically resisted Leeds' efforts to arrest him once Plaintiff was off his bicycle. ECF Nos. 77 at ¶¶ 27-29; 108-6 at 2. Neither side disagrees that Leeds imparted strikes to Plaintiff's head and body—to gain Plaintiff's compliance according to Leeds. ECF No. 108-6 at 2. Plaintiff, however, casts those strikes as excessive force. ECF No. 77 at ¶¶ 83, 94. Plaintiff brings a § 1983 claim against Leeds for excessive force for both the bicycle stop and the body strikes, as well as a claim of battery. ECF No. 77 at ¶¶ 80-87, 93-99. Plaintiff also

2

1   brings a *Monell* claim against Hanford Police Department, Leeds' employer, for the bicycle stop. *Id*. at

2   ¶¶ 104-110.

3       Plaintiff received a medical evaluation and treatment following his interaction with Leeds, and

4   he was released to be booked into Kings County Jail with discharge instructions to see an

5   ophthalmologist approximately three days later. ECF Nos. 107 at 4-5; 115 at 5-6. Plaintiff contends that

6   the jail's private entity medical provider, NaphCare, was deficient in its rendering of care once Plaintiff

7   was booked because NaphCare did not send Plaintiff to see a specialist until two weeks after his

8   admission to the jail and because Plaintiff was sent to an optometrist instead of an ophthalmologist. ECF

9   No. 77 at ¶ 42. Neither Plaintiff nor NaphCare disputes that Plaintiff had a preexisting eye injury at the

10  time of his interaction with Leeds. ECF Nos. 107 at 2-4; 115 at 3-5. At issue is whether that interaction

11  or NaphCare's allegedly deficient care, or both or neither, exacerbated the injury. ECF Nos. 107 at 1-2;

12  115 at 9-10. Plaintiff brings a *Monell* claim against NaphCare. ECF No. 77 at ¶¶ 88-92.

13      Finally, Plaintiff alleges that once he filed his original § 1983 complaint in this case, he

14  experienced an uptick in police surveillance of himself and his home, and increased interaction with

15  police officers that he characterizes as retaliatory harassment. ECF No. 77 at ¶¶ 47-72, 111-147. Plaintiff

16  contends that this behavior culminated with police obtaining a search warrant for his home, motivated

17  solely by animus towards Plaintiff. *Id*. at ¶¶ 70, 114; 114 at 20. Police allegedly found drugs at

18  Plaintiff's home, and he was arrested, which Plaintiff characterizes as a retaliatory arrest. ECF Nos. 77

19  at ¶ 70; 114 at 20. Plaintiff was later arrested on additional charges of witness intimidation, which police

20  allege are related to the drug case and Plaintiff alleges are, again, retaliatory. ECF Nos. 77 at ¶ 72; 108-6

21  at 2; 114 at 20. The drugs and witness intimidation charges are still pending. ECF No. 77 at ¶ 71.

22      Plaintiff brings a § 1983 claim against various officers and Hanford PD, alleging retaliatory

23  violation of his First Amendment rights. ECF No. 77 at ¶¶ 111-122. Plaintiff also brings a Bane Act

24  claim and claims under the California Constitution. *Id*. at ¶¶ 123-147.

25      Additional details and facts will be supplied as needed.

3

# IV. <u>LEGAL STANDARD</u>

Rule 56 of the Federal Rules of Civil Procedure states that a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). At summary judgment, a court's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The Court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence. *See id.* at 255; *see also Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *Liberty Lobby, Inc.*, 477 U.S. at 249-50.

A fact is "material" if its proof or disproof is essential to an element of a plaintiff's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A factual dispute is "genuine" "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Liberty Lobby, Inc.*, 477 U.S. at 248. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal citation omitted).

The moving party bears the initial burden of informing the Court of the basis for its motion, and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact for trial. *Celotex*, 477 U.S. at 323. If the moving party meets its initial burden, the nonmoving party must go beyond the pleadings and, by its own affidavits or discovery, set forth specific facts showing that there is some genuine issue for trial in order to defeat the motion. *See* Fed. R. Civ. P. 56(c); *Liberty Lobby, Inc.*, 477 U.S. at 250.

# V. <u>ANALYSIS</u>

As mentioned, due to its extraordinary caseload, this Court will not dissect and discuss exhaustively the pending cross motions. With few exceptions, only the arguments raised by the parties

are addressed, and the Court's analysis and explanations are limited to those issues and facts necessary for decision.

## A.    Police Defendants' Motion for Summary Judgment

The individually named police officers (Leeds, Patrick Jurdon, Dale Williams, Christifer Barker, Jared Cotta) and Hanford PD (collectively, "Defendants") contend that they should be granted summary judgment on all of Plaintiff's Fourth Amendment claims under the *Heck* doctrine[1] and that they should be granted summary judgment on all First Amendment claims based on a lack of evidence. *See* ECF No. 108. The Court begins with the claims potentially affected by the *Heck* doctrine.

### 1.    The Fourth Amendment Claims

Plaintiff pled guilty to two counts of violating California Penal Code § 148(a)(1) ("§ 148(a)(1)") on February 27, 2019, related to his interaction with Leeds and another officer, Chad Allen ("Allen"), who is not named as a defendant in this suit. ECF No. 108-2 at Ex. 101. Section 148(a)(1) prohibits obstructing, delaying, or resisting a police officer in the lawful discharge of her duties. Cal. Penal Code § 148. Plaintiff's plea came after a jury had been seated and seemingly heard testimony in Plaintiff's criminal trial on the counts involved in his plea, as well as other counts related to the events of January 1, 2016.[2] ECF No. 108-2 at Ex. 101. Specifically, Plaintiff pled guilty to willfully and unlawfully resisting, delaying, and obstructing Leeds, and separately to willfully and unlawfully resisting, delaying and obstructing Allen. *Id.* Neither the plea colloquy nor any other document in the present record specifies the exact conduct associated with each of those pleas. *Id.*

Under the *Heck* doctrine, a plaintiff is barred from bringing suit under § 1983 if "a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence." *Heck v. Humphrey*, 512 U.S. 477, 487 (1994). California applies a similar doctrine, and "[t]he California

---

[1] *Heck v. Humphrey*, 512 U.S. 477 (1994).
[2] The partial transcript in the record indicates that a jury was seated and heard at least some evidence: after the pleas were taken, the court brought the jury into the courtroom, thanked the jurors for their service, and released them from the admonition not to discuss the facts of the case with anyone other than fellow jurors. ECF No. 108-2 at Ex. 101.

5

Supreme Court has not distinguished between the application of *Heck* to § 1983 claims and the application of analogous California law to state-law claims." *Hooper v. County of San Diego*, 629 F.3d 1127, 1134 (9th Cir. 2011). Thus, Plaintiff's two guilty pleas bar § 1983 and state law claims if prevailing on those civil claims would undermine the integrity of his convictions, by, for example, negating an element of the crime. *Heck*, 512 U.S. at 486-87 n.6.

A conviction under § 148(a)(1) requires, as a necessary element, that "the police officer was acting lawfully in the discharge or attempted discharge of her duties at the time the defendant resisted, delayed, or obstructed the officer." *Rodriguez v. City of Modesto*, No. 1:10-CV-01370-LJO-MJS, 2013 WL 6415620, at *4 (E.D. Cal. Dec. 9, 2013). "A police officer is not lawfully performing her duties if she arrests an individual without probable cause [ ] or uses unreasonable or excessive force on the individual at the time the defendant's unlawful resistance, delay or obstruction is occurring." *Id*. (omitting internal citation). Thus, an officer may use reasonable force in response to a defendant's § 148(a)(1) violation, but if the officer responds with excessive force, the claim will not be barred by *Heck. Rodriguez*, 2013 WL 6415620, *4-5; *see also Hooper*, 629 F.3d at 1130, 1133-34.

Defendants' argument is straightforward: they contend that Plaintiff's plea bars absolutely all Fourth Amendment claims related to his stop and arrest in their entirety because Plaintiff's plea necessarily dictates that Leeds was acting lawfully throughout the course of events in response to Plaintiff's unlawful behavior. ECF No. 108-6 at 8-10. Defendants cast Plaintiff's actions on January 1, 2016, as one continuous course of conduct. *Id*. at 2, 8-10.

Plaintiff counters in his opposition that his actions should be parsed moment by moment, and that when so parsed, any of fourteen separate actions could support Plaintiff's plea to violating § 148(a)(1). ECF No. 114 at 12-15. Plaintiff argues that his plea did not include a factual recitation of which of the fourteen actions constituted the basis of his plea; therefore, his specific claims are not *Heck* barred, and no claims could be, in what can only be described as a legal theory of "hide the ball" turned

on its head. *Id.* at 14-15. Further, Plaintiff's complaint denies all resistive actions, which clearly stands at odds and is incompatible with his guilty plea. ECF No. 77 at ¶¶ 27-29.

Both Plaintiff and Defendants devote valuable resources to arguing over the meaning of *Smith v. City of Hemet*, 394 F.3d 689 (9th Cir. 2005), but the rule from *Smith* was modified in later cases that are directly relevant to the question at hand. In 2008, the California Supreme Court decided *Yount v. City of Sacramento*, in which a criminal defendant engaged in a continuous chain of violative actions; subsequently pled guilty to violating § 148(a)(1); and afterwards brought § 1983 claims against a police officer involved with his arrest. 43 Cal. 4th 885 (2008). Despite the continuous course of events and despite the defendant's plea, the California Supreme Court sustained the defendant's § 148(a)(1) conviction while finding the police officer's conduct was both lawful and unlawful when broken down in a timeline. *Id.* at 900. This Court discussed *Yount* and the Ninth Circuit's acknowledgment of it:

> The California Supreme Court distinguished the facts in *Smith* from those in *Yount,* finding that "unlike in Smith, Yount's acts of resistance were part of one continuous transaction involving the officers' efforts to effect his arrest and cannot be segregated into an investigative phase and an independent arrest phase." *Heck* barred Yount's § 1983 claim to "the extent that [it] alleges that he offered no resistance, that he posed no reasonable threat of obstruction to the officers, and that the officers had no justification to employ any force against him at the time he was shot [.]" However, Yount's § 1983 claims were not entirely barred by *Heck,* even though the allegedly excessive force was used during "one continuous transaction." Rather, even if events transpired in a "continuous chain of events," multiple "factual contexts" could exist. One might "giv[e] rise to criminal liability on the part of the criminal defendant, and the second [might] giv[e] rise to civil liability on the part of the arresting officer."
>
> . . .
>
> The Ninth Circuit applied the lessons of *Yount* in *Hooper,* 629 F.3d 1127. In that case, viewing the evidence in a light most favorable to plaintiff on a motion to dismiss, plaintiff struggled briefly with an arresting K9 officer, but stopped resisting after the officer secured her hands behind her back. Shortly thereafter, concerned because spectators had gathered near his patrol vehicle, the K9 officer called his dog to "come here." The dog then ran toward plaintiff and bit her several times. Hooper alleged that the dog bites constituted excessive force. Because the conviction and the § 1983 claim were "based on different actions during 'one continuous

transaction' " the Ninth Circuit permitted the excessive force claim to proceed.

*Rodriguez*, 2013 WL 6415620, at *7 (citations omitted).

Defendants are incorrect that Plaintiff's plea absolutely bars all claims related to his stop and arrest. Plaintiff's plea dictates that Leeds and Allen engaged in some lawful police conduct that was resisted, delayed, or obstructed. However, under *Yount* and *Hooper*, that does not necessarily entail that Leeds was engaged in lawful police conduct throughout the course of events.

Plaintiff is similarly incorrect that his actions must be analyzed as fourteen discrete *actus rei*. To do so would lead to absurd outcomes, e.g., requiring a prosecutor to charge fourteen counts of § 148(a)(1), one for each action. Likewise, to find that there is no factual predicate in the record for Plaintiff's plea in relation to Leeds, and thus that no civil claims implicate the *Heck* doctrine, completely eviscerates that doctrine. California misdemeanor pleas do not require a specific factual recitation for the record, *In re Gross*, 33 Cal. 3d 561 (1983), but that does not mean no evidence as to the conduct underlying the plea exists or that a defendant may avoid the *Heck* bar by pleading guilty to a misdemeanor rather than standing trial—such would be a perverse incentive to plead, if one could avoid *Heck*, and a reward to those engaging in multiple acts of wrongdoing.

In *Hooper*, the Ninth Circuit stated "a conviction under California Penal Code § 148(a)(1) does not bar a § 1983 claim for excessive force under *Heck* when the conviction and the § 1983 claim are based on different actions during 'one continuous transaction.' " 629 F.3d at 1134. As in *Hooper* (and *Yount)*, the chain of events constituting Plaintiff's arrest was "one continuous transaction," in that they derive from Leeds' attempt to stop and arrest Plaintiff, and Plaintiff's flight from and physical resistance to the same. *See Hooper*, 629 F.3d at 1133. Accordingly, Plaintiff only has viable claims under *Heck* to the extent that different actions during the one continuous transaction give rise to Plaintiff's convictions and Plaintiff's civil claims.

8

While Plaintiff contends that his plea to § 148(a)(1) in relation to Allen is irrelevant to his civil action since he did not name Allen as a defendant, Plaintiff is incorrect. His plea in relation to Allen is both relevant and necessary to the Court's analysis, in light of *Hooper. See also Yount*, 43 Cal. 4th at 896-97 ("Otherwise, a section 1983 plaintiff could routinely circumvent the *Heck* bar through artful pleading—e.g., by filing suit against fewer than all of the potential defendants or by defining the civil cause of action to encompass fewer than all of the criminal acts of resistance."). According to the record, Allen arrived to assist Leeds when Leeds was struggling physically with Plaintiff to gain Plaintiff's compliance and place Plaintiff under arrest. ECF Nos. 109-3 at Ex. 4; 109-4 at Exs. 1, 2, 16; 114 at 14; 114-3 at Ex. 36. Allen physically assisted Leeds with Plaintiff's arrest. *Id*. Thus, Plaintiff's plea in relation to Allen dictates that Plaintiff's arrest was lawful and that his physical resistance was unlawful. In other words, Allen was engaged in lawful police conduct when he assisted with placing Plaintiff under arrest.

The plea colloquy and related records do not specifically identify the factual basis for Plaintiff's plea in relation to resisting Leeds. Hypothetically, this charge (and the plea) could have stemmed from a number of "factual contexts" or "different actions" in the one continuous transaction. Was Plaintiff resisting/obstructing/delaying while he was riding his bicycle? Or, was the charge premised on the struggle that ensued after Plaintiff was no longer on his bicycle? Plaintiff's plea to resisting Allen helps narrow the field of possibilities, at least for purposes of *Heck*. That Leeds was engaged in lawful police conduct during the struggle with Plaintiff is implied because, *ipso facto*, Allen was engaged in lawful police conduct when assisting Leeds with arresting Plaintiff. It is not possible to assume otherwise and simultaneously uphold the essential purpose of *Heck*: to ensure that the outcome of a civil lawsuit would not undermine a criminal conviction. In other words, a finding that Leeds was engaged in unlawful conduct while Allen assisted Leeds would necessarily undermine the lawfulness of Allen's conduct as well, which is not permitted under *Heck*. Moreover, Plaintiff's plea in relation to Leeds entails Plaintiff's concession that, at some point, Leeds employed reasonable force in response to Plaintiff's unlawful

resistance, delay, or obstruction. *Rodriguez*, 2013 WL 6415620, at *4. Plaintiff cannot avoid the implications of his plea, and artful pleading, including the omission of certain defendants, will not allow Plaintiff to avoid *Heck*. *Yount*, 43 Cal. 4th at 896-97.

The Court's conclusion is bolstered further by Plaintiff's complaint. As relates to the time when Leeds physically struggled with Plaintiff and Allen arrived on scene, "Plaintiff[ ] did not allege facts showing how the force at issue differed from or exceeded the reasonable force Defendants lawfully could have employed to arrest Plaintiff[ ] for [his] § 148(a)(1) violations." *Rodriguez v. City of Modesto*, 535 Fed. Appx. 643, 645 (9th Cir. 2013). This omission by Plaintiff is significant.

Plaintiff's unlawful physical resistance and the officers' response to it cannot serve as the basis for both his § 148(a)(1) convictions and his Fourth Amendment civil claims related to battery because prevailing on those civil claims would undermine Plaintiff's § 148(a)(1) convictions. Accordingly, to the extent Plaintiff alleges federal and state law claims in relation to the physical struggle between Plaintiff and Leeds, including Leeds' head and body strikes, Plaintiff's claims are barred by the *Heck* doctrine because prevailing would undermine Plaintiff's convictions. Plaintiff's claims in relation to unlawful search subsequent to arrest are also barred, as his pleas implicate his lawful arrest for violation of § 148(a)(1).

However, the same analysis does not bar Plaintiff's claims to the extent they allege excessive force in relation to Leeds' use of his patrol car to stop Plaintiff on his bicycle. Plaintiff cannot argue, as he states in his complaint, that he was arrested without probable cause—that argument is impermissible and inappropriate under *Heck* given Plaintiff's convictions. He still can challenge the force used to effect his initial stop. Different actions—i.e., Plaintiff's flight on a bicycle and his collision with Leeds' patrol car—would thus form the basis for his civil claims, given the Court's findings regarding the basis of his § 148(a)(1) convictions. Prevailing on claims related to the initial stop would not necessarily undermine his convictions, based on the record before the Court.

The Court acknowledges that the scope of what may be barred by *Heck* could come before it for further review at a later time, such as in pretrial motions. The Court does not have the full transcript of the trial proceedings in state court, and this case may be like *Yount*, where a more developed record reveals the full scope of behavior contemplated in Plaintiff's pleas. *Yount*, 43 Cal. 4th at 891-93, 895-96.

## 2.   **The First Amendment Claims**

Defendants contend that they should be granted summary judgment on Plaintiff's First Amendment claims because Plaintiff has no evidence of his claims and merely makes conclusory statements without support. ECF No. 108-6 at 12-13. Plaintiff argues that many facts remain contested, necessitating denial of Defendants' motion. ECF No. 114 at 18-20.

Plaintiff's First Amendment claims center on retaliation. ECF No. 77 at ¶¶ 47-72, 111-147. He alleges that, after he filed a complaint against the Hanford Police Department, he experience increased surveillance of him and his home; harassment; an improperly obtained search and seizure warrant; execution of said improper warrant, which led to the arrest of Plaintiff on drug charges; and the use of "an incident that had been documented by one of [Hanford PD's officers] as non-criminal to justify yet a third arrest." ECF No. 77 at ¶ 114. The Court analyzes these claims as retaliatory surveillance; harassment; a retaliation challenge to the search warrant; and retaliatory arrest for both the drug charges and the "third arrest," which was for witness intimidation charges related to the earlier drug charges.

The Supreme Court very recently had occasion to summarize current law on First Amendment claims such as those brought by Plaintiff:

> "[A]s a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions" for engaging in protected speech. *Hartman v. Moore*, 547 U.S. 250, 256, 126 S. Ct. 1695, 164 L. Ed. 2d 441 (2006). If an official takes adverse action against someone based on that forbidden motive, and "non-retaliatory grounds are in fact insufficient to provoke the adverse consequences," the injured person may generally seek relief by bringing a First Amendment claim. *Ibid.* (citing *Crawford-El v. Britton*, 523 U.S. 574, 593, 118 S. Ct. 1584, 140 L. Ed. 2d 759 (1998); *Mt. Healthy City Bd. of Ed. v. Doyle*, 429 U.S. 274, 283–284, 97 S. Ct. 568, 50 L. Ed. 2d 471 (1977)).

> To prevail on such a claim, a plaintiff must establish a "causal connection" between the government defendant's "retaliatory animus" and the plaintiff's "subsequent injury." *Hartman*, 547 U.S. at 259, 126 S. Ct. 1695. It is not enough to show that an official acted with a retaliatory motive and that the plaintiff was injured—the motive must *cause* the injury. Specifically, it must be a "but-for" cause, meaning that the adverse action against the plaintiff would not have been taken absent the retaliatory motive. *Id.,* at 260, 126 S. Ct. 1695 (recognizing that although it "may be dishonorable to act with an unconstitutional motive," an official's "action colored by some degree of bad motive does not amount to a constitutional tort if that action would have been taken anyway").

*Nieves v. Bartlett*, 139 S. Ct. 1715, 1722 (2019).

The legal parameters of retaliatory arrest were clarified in 2019 by *Nieves*, 139 S. Ct. 1715. *Nieves* partially abrogated the Ninth Circuit's decision in *Ford v. Yakima*, 706 F.3d 1188 (9th Cir. 2013), which had held that a plaintiff could prevail on a First Amendment retaliatory arrest claim even in the face of probable cause for the arrest. The Supreme Court overruled the Ninth Circuit, holding that a plaintiff must "plead and prove the absence of probable cause for the underlying criminal charge," and "[a]bsent such a showing, a retaliatory arrest claim fails." *Nieves*, 139 S. Ct. at 1723, 1725.

Plaintiff's retaliation claim regarding his third arrest (for witness intimidation) is predicated on the notion that Hanford PD Officer Joshua Ragsdale ("Ragsdale") found that Plaintiff's actions were "non-criminal." ECF Nos. 77 at ¶¶ 114, 126, 139; 114 at 20. Plaintiff suggests that improper motivation led to his actions being reviewed a second time, by a different person, and charges being filed without any basis. *Id*. Plaintiff's assertions repeatedly omit facts in the record in a troubling way. It is clear from the Court's review of the record that Ragsdale assessed Plaintiff's actions to see if a charge of criminal threats, California Penal Code § 422, was warranted. ECF No. 114-3 at Ex. 33. Between Ragsdale report and a later supplemental report by a different person, it becomes clear that a necessary element of criminal threats, fear on the part of the victim, was absent, which is why criminal threat charges were not warranted. *Id.*; *see also* Cal. Penal Code § 422. Setting aside Plaintiff's and Defendants' dispute over how Plaintiff's actions came under review a second time, the charge filed ultimately was not criminal

threats. Instead, witness intimidation charges were filed, California Penal Code § 136.1, and those charges do not require fear on the part of victims. ECF No. 114-3 at Ex. 33; *see also* Cal. Penal Code § 136.1. Plaintiff fails to provide this full factual background when deploying his argument. To the contrary, Plaintiff suggests non-criminal activity was wrongly represented as criminal activity in order to obtain charges. ECF Nos. 77 at ¶¶ 114, 126, 139; 114 at 20. That argument is plainly belied by the record.

Regardless, the Court will not decide at this time the issue of summary judgment on this claim. Instead, out of an abundance of caution, the Court will stay Plaintiff's claims relative to the witness intimidation charges while those charges are pending. *Wallace v. Kato*, 549 U.S. 384, 393-94 (2007) (holding that in civil actions that allege a claim or claims "related to rulings that will likely be made in a pending or anticipated criminal trial," "it is within the power of the district court . . . to stay the civil action until the criminal case or the likelihood of a criminal case is ended"). Facts could come to light in criminal court that would bear on the Court's analysis and ultimate conclusion, and for that reason, the Court should not render a decision at this juncture. Should the criminal charges be resolved, the parties must notify the Court so that it may rule on this portion of the instant motion.

Turning to the accusation of retaliatory arrest for drugs, Plaintiff faces another, equally difficult hurdle to surmount. Plaintiff must plead and prove a lack of probable cause, which will mean a direct attack on the search warrant and its validity, as well as the scienter of the officers involved.[3] Again, out of an abundance of caution, the Court will stay Plaintiff's claims as they relate to retaliatory arrest for drugs while his criminal charges are pending. *Wallace*, 549 U.S. at 393-94. The Court will also stay Plaintiff's First Amendment claims as they relate to the search warrant itself and the alleged increased surveillance of him and his home, as both of those are inextricably tied up with Plaintiff's drug case. *Id.*

---

[3] Plaintiff suggests vaguely that the judge who signed the search and seizure warrant that led to his second arrest was not a detached and neutral magistrate, but Plaintiff makes that claim in a status report and not in his pleading. ECF No. 58 at 2. As such, the suggestion of an unduly partial magistrate will be ignored by the Court.

Again, the parties must notify the Court upon resolution of the criminal charges, so that it may rule on this portion of the instant motion.

The Court is left with Plaintiff's accusation of harassment. Viewing the facts in the light most favorable to Plaintiff as the non-moving party, the Court sorts through a dizzying number of accusations, finding that some create a factual dispute and many do not.

To the extent Plaintiff alleges that the drugs-related search warrant was meant to influence the Hanford City Council's vote on his potential settlement regarding his Fourth Amendment claims, ECF No. 77 at ¶¶ 62-65, summary judgment is granted to Defendants. Even viewing the factual record in a light most favorable to Plaintiff, he has presented no direct or circumstantial evidence of this claim other than bare assertions and conclusory statements. The timeline of events is undisputed by parties, with Plaintiff hinging his argument entirely on the fact that the search warrant resulting in the discovery of drugs at Plaintiff's house was executed the day after the council voted against settling. ECF Nos. 77 at ¶¶ 62-65; 114 at 20. The only other fact Plaintiff adds is that both the Chief of Police and the officer who was temporarily Acting Chief oppose settling this case. ECF No. 114 at 6-7. Plaintiff is asking for far too many inferential leaps for these facts—the date of execution of the warrant and the officers' opposition to settlement—to create a dispute of material fact. In addition, even if true that the Council had knowledge of the search warrant and knowledge of the warrant affected the Council's vote, Plaintiff has not created a material dispute of fact that influencing the Council's vote on a settlement is tantamount to chilling Plaintiff's speech. The failure of settlement discussions does not suggest a First Amendment violation.

As to individual Defendants, the Court finds the following:

To the extent that Plaintiff's First Amendment claims relate to Defendant James Sizemore, an Investigator for the King's County District Attorney's Office, the Court notes that Plaintiff has never summoned Sizemore. Accordingly, the Court declines to analyze any allegations relative to him and orders Plaintiff to show cause within ten days why Sizemore should not be terminated as a Defendant.

As the complaint relates to Defendants Barker and Cotta, Plaintiff and Defendants dispute Barker's and Cotta's roles in the drug investigation, as well as Barker's role during Plaintiff's arrest on the witness intimidation charge. ECF Nos. 77 at ¶ 72; 114 at 19. The Court has already addressed above the hurdles faced by Plaintiff in relation to both of his arrests and the related civil claims. In line with its earlier decision, the Court stays the action until Plaintiff's criminal cases are resolved without deciding summary judgment in relation to Defendants Barker and Cotta.

As the complaint relates to Defendant Williams, Plaintiff alleges that Williams appeared at his house without reason on one occasion and demanded Plaintiff show identification or otherwise establish his identity. ECF No. 77 at ¶ 55. Plaintiff has failed to produce any evidence of this allegation, including by way of affidavit. Accordingly, summary judgement is granted to Defendant Williams, and he is terminated from this action.

As the complaint relates to Defendant Jurdon, Plaintiff likewise alleges that Jurdon appeared at Plaintiff's house without reason on one occasion and demanded Plaintiff show identification or otherwise establish his identity. ECF No. 77 at ¶ 54. Plaintiff has failed to produce any evidence of this allegation, including by way of affidavit. Plaintiff also asserts that on one occasion, Plaintiff's wife called police to request assistance in convincing Plaintiff's daughter to attend school. ECF No. 77 at ¶ 56. Plaintiff alleges that Jurdon responded to the call but that in talking with Plaintiff's daughter, Jurdon was less than flattering about Plaintiff, suggesting to Plaintiff's daughter that she "change her ways" to avoid being like Plaintiff. *Id*. Plaintiff has not provided evidence of the conduct, directly or indirectly. Even if he had, the Court finds that the nature of events (Plaintiff's family inviting Jurdon into the house) and the nature of the interaction (unflattering words devoid of threats) cannot support an allegation of harassment or conspiracy to commit harassment. Summary judgement is granted in Defendant Jurdon's favor, and he is terminated from this action.

As to Defendant Leeds, Plaintiff alleges in his complaint that Defendant Leeds allowed a trespasser to be on Plaintiff's property while Plaintiff was not home and refused to assist Plaintiff's

mother in removing the trespasser. ECF No. 77 at ¶ 47. Defendants are correct that Plaintiff has provided no evidence of this claim. Likewise, Defendants are also correct that no evidence exists in the record, at least as it is before the Court, that supports Plaintiff's allegations that Leeds testified falsely at Plaintiff's preliminary hearing[4] or that he was present outside Plaintiff's house in a patrol car at some point when Jurdon approached Plaintiff. *Id.* at ¶¶ 34, 54. Plaintiff does, however, provide evidence that Leeds was near Plaintiff's house on a motorcycle or electric bike one day while on duty. ECF Nos. 114-3 at 146; 114-5 at ¶ 9. There is record evidence that Leeds' superior instructed all officers, including Leeds, to document all contact with Plaintiff. ECF No. 108-5 at 5. No documentation of the alleged "contact" on that day is in the record. Plaintiff asserts he called the Chief of Police about Leeds' presence in the area, and the Chief allegedly denied that Leeds would be anywhere near Plaintiff's home. ECF No. 114-5 at ¶ 11. On summary judgment, the Court must accept this evidence as true. Viewing it in a light most favorable to Plaintiff, it is plausible that a finder of fact could conclude that this constitutes harassment designed to chill Plaintiff's exercise of his constitutional rights. Therefore, the Court grants summary adjudication to Leeds as it relates to events without evidence in the record and denies summary adjudication as it relates to Leeds presence near Defendant's home while on duty. However, because allegations against Leeds in this regard are inextricably intertwined with the other retaliation claims already stayed, the Court stays the balance of Plaintiff's First Amendment claims pending the outcome of his criminal cases.

The parties do not address that Defendants Does 11–30 remain, although the parties have had ample time in which to engage in discovery. *See Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir.1980) (finding that "the plaintiff should be given an opportunity through discovery to identify the unknown defendants."). At this late stage of litigation, post-discovery, Plaintiff has not named additional

---

[4] Attached to Plaintiff's motion for summary judgment is an excerpt of Leeds' testimony from Plaintiff's preliminary hearing. The exchange centers entirely on the bicycle stop. With the court's assistance, the ultimate question asked was Leeds' intent in placing his patrol vehicle in Plaintiff's path: whether it was to cause a collision or to stop Plaintiff. Leeds answered his intent was the latter. That does not create a dispute of material fact on Defendants' motion. ECF No. 109-4 at Ex. 19.

defendants, presumably additional officers. As there is no provision in the Federal Rules of Civil Procedure permitting the use of fictitious defendants, the Court, *sua sponte*, will grant summary judgment in their favor and dismiss the remaining Doe Defendants in advance of the imminent trial. *Estate of Crawley v. McRae*, No. 1:13-CV-02042-LJO, 2015 WL 5432787, at *44 (E.D. Cal. Sept. 15, 2015); *see Fifty Assocs. v. Prudential Ins. Co. of Am.*, 446 F.2d 1187, 1191 (9th Cir. 1970); *see also Columbia Steel Fabricators, Inc. v. Ahlstrom Recovery*, 44 F.3d 800, 803 (9th Cir. 1995) (affirming district court's grant of summary judgment in favor of non-appearing defendant).

**B.    Plaintiff's Motion for Summary Judgment**

In the second motion before the Court, Plaintiff moves for summary judgment on a single issue: the Fourth Amendment *Monell*[5] claim against Hanford PD, which relates only to the bicycle stop of Plaintiff by Leeds. ECF No. 109. Plaintiff argues that Hanford PD has failed in its "obligation to train and supervise its officers under the U.S. Constitution and prevent unconstitutional customs and practices." *Id*. at 6. Plaintiff asserts that "there is no genuine dispute of material fact pertaining to the unsafe and unreasonable nature of the practice complained of"; Plaintiff was injured as a result of the practice; and "[Hanford PD] was aware of its officers' use of the practice … and failed to take any action to correct, limit, or prevent it." *Id*.

Defendant Hanford PD opposes, arguing that material facts remain in dispute, including conflicting opinions of each side's expert witness and the time and distance Plaintiff had to avoid colliding with Leeds' patrol car. ECF No. 113 at 9-10. Other issues precluding summary judgment, according to Defendants, include Plaintiff's failure to provide evidence of a pattern of constitutional violations. *Id*. at 7-8.

**1.    Law**

"Section 1983 provides for liability against any person acting under color of law who deprives

---

[5] *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978).

another 'of any rights, privileges, or immunities secured by the Constitution and laws' of the United States." *S. Cal. Gas Co. v. City of Santa Ana*, 336 F.3d 885, 887 (9th Cir. 2003) (quoting 42 U.S.C. § 1983). Pursuant to *Monell*, a "municipality or other local government may be liable under [§ 1983] if the governmental body itself 'subjects' a person to a deprivation of rights or 'causes' a person 'to be subjected' to such deprivation." *Connick v. Thompson*, 563 U.S. 51, 60 (2011). In order to recover, a plaintiff "must prove that action pursuant to official municipal policy caused their injury." *Id*. at 60-61 (internal quotations and citation omitted).

Specifically, for municipal liability, a plaintiff "must show that (1) she was deprived of a constitutional right; (2) the [municipality] had a policy; (3) the policy amounted to a deliberate indifference to her constitutional right; and (4) the policy was the moving force behind the constitutional violation." *Mabe v. San Bernardino Cty., Dep't of Pub. Soc. Servs.*, 237 F.3d 1101, 1110-11 (9th Cir. 2001) (internal quotation and citation omitted). A plaintiff additionally may prove policy or custom:

> (1) by showing a longstanding practice or custom which constitutes the 'standard operating procedure' of the local government entity; (2) by showing that the decision-making official was, as a matter of state law, a final policymaking authority whose edicts or acts may fairly be said to represent official policy in the area of decision; or (3) by showing that an official with final policymaking authority either delegated that authority to, or ratified the decision of, a subordinate.

*Menotti v. City of Seattle*, 409 F.3d 1113, 1147 (9th Cir. 2005) (international quotations and citation omitted). Finally, "a local governmental entity may be liable if it has a policy of inaction and such inaction amounts to a failure to protect constitutional rights," but only if that policy of inaction is "the result of a conscious or deliberate choice … made from among various alternatives." *Lee v. City of Los Angeles*, 250 F.3d 668, 681 (9th Cir. 2001) (internal quotations and citations omitted).

"A local governmental entity's failure to train its employees can [ ] create § 1983 liability where the failure to train 'amounts to deliberate indifference to the rights of persons' with whom those employees are likely to come into contact." *Lee*, 250 F.3d at 681 (quoting *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388-89 (1989)). It is "only where a failure to train reflects a 'deliberate' or

18

'conscious' choice by a municipality" that the municipality may be liable. *City of Canton,* 489 U.S. at 389. In addition, "the identified deficiency in a local governmental entity's training program must be *closely related* to the ultimate injury." *Lee*, 250 F.3d at 681 (emphasis in original) (internal quotations, modifications, and citation omitted). In other words, a plaintiff must prove that his or her constitutional injury "would have been avoided" had the governmental entity trained its employees properly. *Id.* (quoting *Oviatt By and Through Waugh v. Pearce*, 954 F.2d 1470, 1478 (9th Cir. 1992)).

Like failure to train, failure to supervise can constitute a policy of inaction that amounts to deliberate indifference to a plaintiff's constitutional rights. *Jackson v. Barnes*, 749 F.3d 755, 763 (9th Cir. 2014). "This requires showing that the defendant was on actual or constructive notice that its omission would likely result in a constitutional violation." *Id.* (internal quotations and citations omitted). "Mere negligence in training or supervision [ ] does not give rise to a *Monell* claim." *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011).

"A pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference for purposes of failure to train." *Connick*, 563 U.S. at 62 (internal quotations and citation omitted). "Without notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights." *Id.* Finally, the Ninth Circuit has observed that there is "no principled reason to apply a different standard in adequate supervision" cases than that applied in inadequate training. *Davis v. City of Ellensburg*, 869 F.2d 1230, 1235 (9th Cir. 1989); *see also Van Ort v. Estate of Stanewich*, 92 F.3d 831, 835 (9th Cir. 1996) (observing that the requirements announced by the Supreme Court for negligent training claims have been applied since to negligent supervision and hiring claims).

"Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996). Following this logic, "contemporaneous or subsequent conduct cannot establish a pattern of violations

19

that would provide notice to the [municipality] and the opportunity to conform to constitutional dictates." *Connick*, 563 U.S. at 63 n.7 (internal quotations and citation omitted). The inquiry regarding adequacy of notice is highly specific to the facts of the case under consideration; the line between adequate and inadequate evidence of repeated constitutional violations does not involve a specific quantum or number of allegations. *Gonzalez*, 289 F. Supp. 3d at 1099. For example, the Ninth Circuit has held that two unconstitutional assaults occurring three months apart were insufficient to show custom or practice, *Meehan v. County of Los Angeles*, 856 F.2d 102, 107 (9th Cir. 1988), but five incidents of suppression of political speech on the same day was sufficient, *Menotti*, 409 F.3d at 1148. Similarly, the Supreme Court has declined to conclude that a single event, under unique circumstances, could not constitute evidence of indifference sufficient to create liability. *Bd. of Cty. Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 409 (1997). As this Court has observed previously:

> Perhaps the most that can be said is that one or two incidents ordinarily cannot establish a policy or custom, while more incidents may permit the inference of a policy, taking into account their similarity, their timing, and subsequent actions by the municipality.

*J.M. by & Through Rodriguez v. Cty. of Stanislaus*, No. 1:18-CV-01034-LJO-SAB, 2018 WL 5879725, at *5 (E.D. Cal. Nov. 7, 2018).

### 2.  **Analysis**

At the heart of Plaintiff's *Monell* claim is the reasonableness of the force used in seizing Plaintiff. "Where the objective reasonableness of an officer's conduct turns on disputed issues of material fact, it is 'a question of fact best resolved by a jury.' " *Torres v. City of Madera*, 648 F.3d 1119 (9th Cir. 2011) (quoting *Wilkins v. City of Oakland,* 350 F.3d 949, 955 (9th Cir. 2003)). With this as its lens, the Court examines whether there is a genuine dispute as to any material fact.

In opposing Plaintiff's motion, Defendant Hanford PD points first to the dueling expert opinions presented by it and Plaintiff concerning the appropriateness of Leeds' use of his patrol car to stop Plaintiff. ECF No. 113 at 9-10. The differing opinions, Hanford PD contends, is sufficient to raise an

issue of material fact because the experts themselves adopt different interpretations of factual issues. *Id*. For example, Plaintiff's experts opines that Leeds' use of his patrol car to stop Plaintiff was reckless because "[e]very competently trained police officer knows that the weight of the patrol car … can cause lethal injuries, and should only be used as a weapon in the most dire of situations." ECF No. 109-4 at Ex. 16. Defendant Hanford PD's expert, on the other hand, contends that Leeds did not use his patrol vehicle as a lethal weapon when he cut his car in front of Plaintiff, contrasting Leeds' tactic to that of deliberately ramming a person on bicycle, which the expert implies would constitute using a car as a weapon. ECF No. 113-1 at Ex. 112.

Hanford PD also argues that Leeds' deposition testimony regarding Plaintiff's distance from Leeds when Leeds stopped his patrol car, and thus how much time and space Plaintiff had to stop his bicycle, contradicts the facts as presented by Plaintiff. Leeds states he "pulled [his] vehicle well in front of" Plaintiff and estimates that the distance between his patrol car and Plaintiff was "approximately two car lengths." ECF Nos. 109 at Ex. 20; 113-1 at Ex. 110. Plaintiff, on the other hand, contends (through a second expert witness) that he only had 0.8 seconds to stop, given his estimates of his speed and the distance to Leeds' car. ECF No. 109 at 13.

Defendant Hanford PD argues that both of the above inform the question of reasonable or excessive force and thus whether a constitutional violation occurred. No. 113 at 9-10. The Court agrees, noting that while it could explore further questions of disputed material facts concerning the physical stop, it need not. The objective reasonableness of Leeds' conduct is a matter best resolved by a jury as the finder of fact.

Additional factual disputes unrelated to the physical stop exist that preclude summary judgment. In order to prove the deliberate indifference required for a claim of a policy of inaction, i.e. failure to train or supervise, Plaintiff must demonstrate a pattern of prior constitutional violations that placed Defendant Hanford PD on notice of the need to train or supervise. Defendant argues that the claimed violative tactic was not so widespread or recurring as to generate a need to train or supervise. ECF No.

113 at 7-8. Put another way, Defendant argues it has never been put on notice.

In reviewing Plaintiff's complaint and motion for his examples proffered to show actual or constructive notice to Defendant, many of the examples cannot sustain a finding of pattern sufficient to establish deliberate indifference. Plaintiff cites to examples that occurred after the events of this case. *See, e.g.,* ECF Nos. 77 at ¶¶ 36-37; 109 at 8.[6] Those cannot serve as the basis for notice to Defendant, and are irrelevant, at least in this context, because their timing would not alert Defendant to the need to train or supervise prior to Plaintiff's contact with Leeds. *Connick*, 563 U.S. at 62. Plaintiff also cites examples without dates, which renders them meaningless temporally. *See, e.g.,* ECF Nos. 77 at ¶ 37; 109 at 10-12; 109-4 at Exs. 6, 8. One example that did include a timeframe occurred approximately eighteen years prior, which in isolation is too aged to aid Plaintiff's claim. ECF Nos. 109 at 10-11; 109-4 at Ex 6.

Absent, too, is context. The Court cannot speculate as to the factual similarities or differences between Plaintiff's stop and other stops. To begin, it is unclear how many prior incidents have resulted in collisions, and if they resulted in collisions, whether the bicyclists were injured. Also unclear are the reasons necessitating these stops. One officer reported being involved in a collision but no further facts, including date or context, are available. ECF Nos. 109 at 10; 109-4 at Ex 8. Another officer reported using the tactic between ten and thirty times without ever having a collision—and again, dates and context of the officer's stops are absent. ECF Nos. 109 at 11; 109-4 at Ex 5. Two or three officers reported hearing about collisions but could not give specifics; it is unclear how many of these collisions overlap or are duplicative.[7] Leeds reported seeing other officers use the tactic possibly five times over four years, with one instance resulting in a collision and scraped elbow. ECF Nos. 109 at 11-12; 109-4 at

---

[6] These are references to the alleged stops of "Ashley Thompson." Based on the record, these stops occurred the summer after Plaintiff's interaction with Leeds.
[7] For example, Plaintiff writes that Lt. Lutz was aware of three to four instances of collisions. ECF No. 109 at 10-11. In reviewing Lutz's deposition, it is clear that two of these collisions are his own collision, which is 18-years-old, and Leeds' collision with Plaintiff. ECF No. 109-4 at Ex. 6.

Ex. 21. Finally, Plaintiff cites to an example of a death that occurred in another jurisdiction but, similarly, that cannot serve as notice to this Defendant, located in Hanford. ECF No. 109 at 27.

Plaintiff must show pattern through the similarity of incidents, their timing, and subsequent actions by the municipality, if any. He has not done so. And while the Supreme Court has declined "to conclude that a single event, under unique circumstances, could not constitute evidence of indifference sufficient to create liability," *Brown*, 520 U.S. at 409, Plaintiff has failed to allege or argue that position.

For the above reasons, Plaintiff's request for summary judgment on the issue of policy of inaction is DENIED.

**C.** **Defendant NaphCare's Motion for Summary Judgment**

Defendant NaphCare moves for summary judgment, arguing that Plaintiff's Fourteenth Amendment *Monell* claim against it fails as a matter of law because he did not allege in his complaint that his injuries were the result of a policy, custom, or policy of inaction. ECF No. 107 at 16-18. Plaintiff concedes that he did not allege policy or custom in his complaint, but he vehemently argues that his omission does not constitute a failure to give Defendant NaphCare notice of his theory. ECF No. 115 at 2, 12-15. In the alternative, Plaintiff requests leave to file an amended complaint, which would become his sixth total, and argues to a lesser extent that a medical deliberate indifference theory can be sustained without alleging directly a policy, custom, or practice because knowledge of the risk of Defendant's alleged behavior can be inferred. *Id.* at 2, 12-15, 17.

In the context of § 1983 claims, the Ninth Circuit has stated that there is "no basis in the reasoning underlying *Monell* to distinguish between municipalities and private entities acting under color of state law." *Tsao v. Desert Palace, Inc.*, 698 F.3d 25 1128, 1139 (9th Cir. 2012) (holding that "the requirements of *Monell* do apply to suits against private entities under § 1983."). To prove a claim against a private entity under *Monell*, a plaintiff must show that (1) the private entity acted under color of state law, and (2) if a constitutional violation occurred, the violation was caused by an official policy or custom of the private entity. *Tsao*, 698 F.3d at 1139.

Case law has made clear that to sustain a Fourteenth Amendment claim against a municipality or private entity, "[i]t is not sufficient for a plaintiff to identify a custom or policy, attributable to the municipality, that caused his injury. A plaintiff must also demonstrate that the custom or policy was adhered to with 'deliberate indifference to the constitutional rights of [the jail's] inhabitants.' " *Castro v. Cty. of Los Angeles*, 833 F.3d 1060, 1076 (9th Cir. 2016) (quoting *City of Canton*, 489 U.S. at 392). Under *Tsao* and later cases, this principle applies to entity defendants.

A claim alleging a policy of inaction amounting to deliberate indifference requires a showing that the defendant "was on actual or constructive notice that its omission would likely result in a constitutional violation"; only then does the omission reflect a deliberate or conscious choice to violate the constitution. *Deloney v. Cty. of Fresno*, No. 117CV01336LJOEPG, 2018 WL 3388921, at *9 (E.D. Cal. July 11, 2018) (quoting *Tsao*, 698 F.3d at 1145 (citations omitted)).  As explained in § V(B)(1) above, a plaintiff ordinarily demonstrates notice through allegations of a sufficient pattern of prior similar constitutional violations. *Connick*, 563 U.S. at 62.

The sole named Defendant attached to Plaintiff's Fourteenth Amendment claim of denial of medical services is the private entity NaphCare. ECF No. 77. Based on a plain reading of Plaintiff's complaint, Defendant is correct that Plaintiff did not allege a policy, custom, or policy of inaction in relation to Plaintiff's injury. Plaintiff counters that the presence of the clause "As a result of a corporate policy, custom, and practice," appended to his existing sentence "Naphcare never treated [Plaintiff] properly for his dislocated lens" should not be required in order to allege a *Monell* claim and that the phrase is but a mere technicality. ECF No. 115 at 14-15. Plaintiff is mistaken about pleading requirements generally, the enhanced requirements under *Twombly-Iqbal*[8] (even taking into account the difficulty of pleading a policy claim, pre-discovery), and the significance of Plaintiff's five opportunities

---

[8] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

1  to perfect his pleading, two of which have been granted subsequent to Plaintiff deposing a medical

2  provider employee of Defendant NaphCare.

3       Plaintiff contends that, should the Court find that his complaint is defective in alleging a *Monell*

4  claim, he *must* be allowed to now amend his complaint in order to plead a policy. ECF No. 115 at 12.

5  The Ninth Circuit summarized the factors a court is to consider when weighing such a request as: 1) bad

6  faith; 2) undue delay; 3) prejudice to the opposing party; and 4) futility. *In re Tracht Gut, LLC*, 836 F.3d

7  1146, 1152 (9th Cir. 2016). Bad faith has been construed by the Ninth Circuit as a plaintiff "merely [ ]

8  seeking to prolong the litigation by adding new but baseless legal theories." *Griggs v. Pace American*

9  *Group, Inc.,* 170 F.3d 877, 881 (9th Cir. 1999). The Court does not see any evidence of bad faith on

10  Plaintiff's part given this lens. The remaining three factors—undue delay, prejudice to the opposing

11  party, and futility—weigh heavily against Plaintiff.

12       In brief, this case was filed originally on March 23, 2017. ECF No. 1. The trial date is set for

13  December 3, 2019. Plaintiff already has amended his complaint four times, for a total of five pleadings.

14  ECF Nos. 1, 7, 31, 67, 77. His most recent amendments were filed August 7, 2018, and October 21,

15  2018. ECF Nos. 67, 77. Discovery has closed in this case, and the trial date draws near. This timeline is

16  enough to suggest undue delay, absent new facts being uncovered or an explanation other than a claim

17  of no prejudice to Defendant. *Lockheed Martin Corp. v. Network Solutions, Inc.*, 194 F.3d 980, 986 (9th

18  Cir. 1999). Prejudice may also be inferred, given that discovery has closed and Plaintiff did not plead a

19  policy, custom, or a pattern of inaction in his complaint, *id.*, but the Court need not examine fully the

20  issues of prejudice or undue delay, as it would be futile to allow Plaintiff to amend his complaint based

21  on the information he presents in his opposition.

22       Even if Plaintiff was permitted to amend his complaint to allege a policy or custom at this

23  juncture, Plaintiff's theory is centered on inaction on the part of NaphCare, which requires a sufficient

24  showing of previous violations to establish deliberate indifference on the part of an entity defendant. The

25  only evidence Plaintiff has presented to suggest he can demonstrate a pattern is wholly insufficient.

Plaintiff appends an affidavit of someone who was allegedly in a cell with Plaintiff at some point in 2019 and who purportedly experienced difficulties receiving appropriate medical treatment through Defendant NaphCare. ECF Nos. 115 at 18; 115-4. Setting aside Defendant NaphCares's evidentiary objections to the affidavit, the Court finds that such affidavit does not establish a pattern that would constitute notice under existing law because subsequent and contemporaneous events cannot place a defendant on notice temporally. *Connick*, 563 U.S. at 63 n.7. Plaintiff's only other evidence of pattern is his statement that "[a]s a corporation in the business of providing medical care to inmates at Kings County Jail …, the Court may infer that [Defendant] was aware" of the risks of (allegedly) delaying medical care. ECF No. 115 at 17. Put quite simply, that is not the standard for alleging a *Monell* claim. Accordingly, amendment of Plaintiff's claim would be futile.

The Court cannot say whether there are triable issues of fact regarding violations of Plaintiff's constitutional rights by Defendant NaphCare because it does not reach that analysis. Defendant NaphCare can only be liable under § 1983 if Plaintiff raises a triable issue of fact that the alleged violation occurred as a result of a policy, decision, or custom promulgated or endorsed by NaphCare. *See George v. Sonoma Cty. Sheriff's Dep't*, 732 F. Supp. 2d 922, 940 (N.D. Cal. 2010). Plaintiff has not done so.

For the foregoing reasons, summary judgement is GRANTED to Defendant NaphCare as to claim two, the sole claim in which they were named. Plaintiff's request to amend his complaint is DENIED. Defendant NaphCare is terminated from this action.

## VI. <u>CONCLUSION AND ORDER</u>

For the foregoing reasons, the Court hereby ORDERS that:

1)      Plaintiff's motion for partial summary judgement, ECF No. 109, is DENIED;

2)      Defendant NaphCare's motion for summary judgement, ECF No. 107, is GRANTED, Defendant NaphCare is terminated from this case, and Plaintiff's motion to amend is DENIED; and

3)      Defendants Leeds, Jurdon, Williams, Barker, Cotta, and Hanford Police Department's motion for

summary judgment, ECF No. 108, is GRANTED in part and DENIED in part, as follows:

      a)      to the extent Plaintiff alleges federal and state law claims in relation to the physical struggle between Plaintiff and Defendant Leeds, including Leeds' head and body strikes, Plaintiff's claims are BARRED by the *Heck* doctrine, and summary judgment is GRANTED;

      b)      to the extent Plaintiff alleges federal and state law claims in relation to a search incident to arrest, his claims are BARRED by the *Heck* doctrine, and summary judgment is GRANTED;

      c)      to the extent Plaintiff alleges federal and state law claims in relation to Leeds' use of his patrol car to stop Plaintiff on his bicycle, his claims are NOT BARRED by *Heck*, and summary judgment is DENIED;

      d)      to the extent Plaintiff alleges federal and state law claims in relation to his two alleged retaliatory arrests, as well as claims of retaliatory surveillance and an improperly obtained search warrant, Plaintiff's claims are STAYED pending resolution of his criminal charges, and <u>upon resolution of the criminal charges, parties are to notify the Court</u> so that it may rule on this portion of the instant motion and any others that may be stayed;

      e)      to the extent that Plaintiff alleges retaliatory influence on Hanford City Council by Defendants, summary judgment is GRANTED;

      f)      as claims relate to Defendant Barker, they are STAYED pending resolution of Plaintiff's criminal charges;

      g)      as claims relate to Defendant Cotta, they are STAYED pending resolution of Plaintiff's criminal charges;

      h)      as claims relate to Defendant Williams, summary judgment is GRANTED;

      i)      as claims relate to Defendant Jurdon, summary judgment is GRANTED;

j)      as to the <u>harassment claims only</u> as they relate to Defendant Leeds, summary judgment is GRANTED in part and DENIED in part, consistent with this decision, and <u>the harassment claim</u> surviving this motion is STAYED pending resolution of Plaintiff's criminal charges;

k)      as claims relate to Defendants Does 11-30, the Court *sua sponte* GRANTS summary judgment in their favor and terminates them from these proceedings.

It is FURTHER ORDERED that Plaintiff has 10 days to show cause why Defendant Sizemore should not be terminated as a Defendant in this suit, as he has not been served.

IT IS SO ORDERED.

Dated:    **August 29, 2019**              **/s/ Lawrence J. O'Neill**
                                  UNITED STATES CHIEF DISTRICT JUDGE